UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID YZAGUIRRE,

       Plaintiff,

v.                                      Case No: 2:13-cv-654-FtM-38CM

FLAVIA EPPS, CAPTAIN ZAMORA,
FNU WUTDKE and FNU SAMUELS,

       Defendants.
_____/

## OPINION AND ORDER[1]

### I.

This matter comes before the Court upon review of Defendants' motion for summary judgment (Doc. #41, Motion), filed February 11, 2015. Defendants attach supporting exhibits including: Affidavit of Rebecca Jackson (Exh. A.), Affidavit of Latoya Samuels (Exh. B), Affidavit of Travis Wudtke (Exh. C), Desoto County Sheriff's Office Complaint/Witness Affidavit Form submitted by Michael Zamora (Exh. D), Florida Civil Commitment Center Incident Form submitted by Captain Kilgo (Exh. E), Affidavit of Carl Kilgo (Exh. F), and Desoto County Sheriff's Office Complaint/Witness Affidavit Form

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

written by Plaintiff (Exh. G). Plaintiff has not filed a response to the Defendants' Motion and the time to do so has expired.[2] See docket. This matter is ripe for review.

## II.

Plaintiff David Yzaguirre, who is civilly detained at the Florida Civil Commitment Center ("FCCC"), initiated this action proceeding *pro se* by filing a Civil Rights Complaint (Doc. #1, Complaint) alleging a Fourteenth Amendment failure to protect claim against Defendants, who are FCCC officials. The Complaint arises from an August 11, 2012 incident that occurred at the FCCC when a FCCC resident (hereinafter "CO") attacked Plaintiff with a homemade knife. See generally Complaint. According to the Complaint, Plaintiff alleged that FCCC residents, who were in CO's treatment group, heard CO say that he had a dream about using a weapon to attempt to kill another resident. Id. at 5. Plaintiff claims an FCCC resident anonymously slipped a note under the Captain's door describing what CO said during therapy. Id. Plaintiff also faults the therapy technician for not alerting FCCC officials about CO's threats made during therapy. Id. Concerning the attack itself, Plaintiff claims Defendant Samuels did not call security quick enough. Id. at 6. Plaintiff also blames Defendants for placing him on a wing restriction at the FCCC for fourteen days after the attack. Id.

Defendants move for summary judgment and argue *inter alia* that there is no evidence showing Defendants were subjectively aware that Plaintiff, or any resident at

---

[2]The Court advised Plaintiff about the provisions of Fed. R. Civ. P. 56. See Docs. #9, #42, #51. On August 4, 2015, the Court denied Plaintiff's untimely motion to compel and directed Plaintiff to file a response within seven days from the date on the Order. On August 5, 2015, Plaintiff filed a motion for clarification concerning his prior motion for an enlargement of time and his motion to compel. It is clear based on this record that Plaintiff's motion for clarification was filed prior to receiving the Court's August 4 order. Accordingly, Plaintiff's motion for clarification is due to be denied as moot.

the FCCC, was at risk from resident CO.  See Motion at 2-3.  Additionally, Defendants explain that Plaintiff was placed on wing restriction after the attack for fourteen days while the matter was under investigation pursuant to FCCC policy.  Id. at 4.  For the reasons that follow, the Court finds Defendants' motion is due to be granted.

### III.

"Summary judgment is appropriate only if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted).  See also, Fed. R. Civ. P. 56(c)(2).  "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial."  Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor.  To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, *i.e.*, affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial."  Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elec. N. America, Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be

drawn in favor of the non-moving party.  Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003).  In doing so, the Court "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  Beard, 548 U.S. at 529-30.  Also, "[a] court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'"  Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).  Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

### IV.

A.  **Section 1983**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  Arrington v. Cobb County, 139

F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).

The Supreme Court has soundly rejected the possibility of *respondeat superior* as a basis of liability in § 1983 actions. Monell v. Dep't of Soc. Serv., 436 U.S. 659, 690-692 (1978). Instead, supervisory liability can be imposed under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); cert. denied, 500 U.S. 933 (1991). Absent personal participation by a defendant, a plaintiff must show an affirmative causal connection between the defendant's acts and the alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)(quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. Cottone, 326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining citations omitted).

### B. Fourteenth Amendment- Failure to Protect

Plaintiff alleges a violation of his rights protected under the Fourteenth Amendment of the United States Constitution stemming from Defendants' failure to protect him from resident CO's attack. See generally Complaint. Under Youngberg v. Romeo, 457 U.S. 307, the Due Process Clause of the Fourteenth Amendment ensures the involuntarily civilly committed a liberty interest in reasonably safe conditions of confinement, freedom from unreasonably bodily restrains, and such minimally adequate training as might be required to ensure safety and freedom from restraint. Id. at 322. The rights of the involuntarily civilly committed are "at least as extensive" as the Eighth Amendment rights of the criminally institutionalized. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996); Lavender v. Kearney, 206 F. App'x 860, 863 (11th Cir. 2006)(unpublished). Therefore, the case law that has developed under the Eighth Amendment sets forth the contours of the due process rights of the civilly committed. Dolihite, 74 F.3d at 1041. FCCC staff have a duty to protect the civilly detained from violence at the hands of the other civilly detained residents. See Farmer v. Brennan, 511 U.S. 825, 833 (1994)(applying analysis in a prison context); Brown v. Budz, 398 F.3d 904, 909 (7th Cir. 2005)(applying Farmer analysis to a civil commitment facility); Nelson v. Shuffman, 603 F.3d 439, 446 (8th Cir. 2010)(same). However, not every injury "translates into constitutional liability." Farmer, 511 U.S. at 834. In Carter v. Galloway, 352 F.3d 1346 (11th Cir. 2003) the court summarized the relevant principles:

> A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials

> responsible for the victim's safety. An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk. To survive summary judgment on his section 1983, Eighth Amendment claim, plaintiff was required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.

Id. at 1349 (citations and quotations omitted). In other words, "for an involuntarily civilly-committed plaintiff to establish a § 1983 claim for violation of his due process rights, he must show that state officials were deliberately indifferent to a substantial risk to his safety." Lavender, 206 F. App'x at 863. A plaintiff must demonstrate that the defendant was aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists and that the prison official drew that inference. Purcell v. Toombs County, 400 F.3d 1313, 1319-20 (11th Cir. 2005); Carter, 352 F.3d 1346 at 1349.

To show that an official had subjective knowledge, the court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." Carter, 352 F.3d at 1350. "A plaintiff's failure to give advance notice to prison officials of a specific threat or of his fear of an inmate is relevant to this inquiry, Carter, 352 F.3d at 1349-50, though it is not dispositive, see Farmer, 511 U.S. at 848." Moulds v. Bullard, 345 F. App'x 387 (11th Cir. 2009)(unpublished). Indeed, "[d]eliberate indifference can be predicated upon knowledge of a victim's particular vulnerability (though the identity of the ultimate assailant not known in advance of attack), or, in the alternative, an assailant's predatory nature (though the identity of the ultimate victim not known in advance of attack)." Brown, 398 F.3d at 915. Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence. Farmer, 511 U.S. at 842. Consequently, evidence of past attacks which were "longstanding, pervasive,

well-documented, or expressly noted by [ ] officials in the past" may be sufficient to find that the official had actual knowledge. Id. However, general knowledge that a particular inmate is a problem inmate with a well-documented history of prison disobedience who is prone to violence is not sufficient. Carter, 352 F.3d at 1349. See also McBride v. Rivers, 170 F. App'x 648 (11th Cir. 2006)(unpublished).

Defendants move for summary judgment and argue *inter alia* that they were not subjectively aware of a known risk of harm to Plaintiff by CO and there is no evidence that any letter describing CO's general threats during therapy were given to the Captain. Motion at 2, 10; See also Exh. A, Aff. Jackson; Exh. B, Aff. Samuels; Exh. F, Aff. Kilgo. The unopposed evidence of record shows that Plaintiff never made any statements, or filed any resident communication forms advising Defendants that he was in fear of resident CO. Id. The undisputed evidence supports the finding that this incident was an attack that took everyone, including Plaintiff, by surprise. Motion at 2, 10; See also Exh. G, Desoto Sheriff Form from Yzaguirre. After the fight began, security at the FCCC, consisting of Defendants Wudtke, Zamora, and Kilgo, responded within seconds to the code Green called by Defendant Samuels. Motion at 2; see also Exh. B, Aff. Samuels, Exh. C, Aff. Wudtke, Exh. D, Desoto County Sheriff's Form from Zamora; Exh. E, Incident Report from Kilgo; Exh. F, Aff. Kilgo; Exh. G, Desoto Sheriff's Form from Yzaguirre. Resident CO swung his homemade knife toward responding officer Wudtke. Motion at 7; Exh. C, Aff. Wudkte; Exh. F, Aff. Kilgo. Security officials secured both resident CO and the Plaintiff. Id. The whole incident from start to finish was less than a few minutes. Motion at 6; Exh. C, Aff. Wudkte; Exh. F, Aff. Kilgo. Plaintiff initially thanked the responding FCCC officers for saving his life. Id. at 9; Exh. G, Desoto County Sheriff's

Form from Yzagguire. After the incident, Plaintiff was transported to the Desoto Memorial Hospital for treatment. Motion at 8; Exh. D, Desoto Sheriff's Form from Zamora.

In this case, the uncontroverted evidence of record demonstrates that Defendants did not act with deliberate indifference to a substantial risk of serious harm to Plaintiff. In particular, there is no evidence to support an inference that a substantial risk of serious harm existed and that the Defendants drew that inference. Instead, the evidence demonstrates that CO's attack on Plaintiff was a surprise attack. When Defendant Samuels saw the fight, she immediately called a "Code Green" and FCCC security officers responded within seconds. FCCC officers risked their own lives to save Plaintiff. The entire incident from start to finish was less than a few minutes. FCCC officials restrained resident CO and Plaintiff. Plaintiff was sent to the hospital for treatment. FCCC officials conducted an investigation, involving the Desoto County Sheriff's Office, during which time they held Plaintiff on wing restriction.

This Court recognizes that it is well settled that deliberate indifference may be found even though the specific identify of the ultimate victim is not known in advance of the assault. See Brown, 398 F.3d at 916. However, the uncontroverted evidence in this record does not support a finding that resident CO had a predatory nature. Instead, Defendants provide evidence that neither the FCCC's clinical files, nor the FCCC's incident reports, show any reference to CO threatening violence against either FCCC staff members or residents. Exh. A, Aff. Jackson. Plaintiff provides no evidence to the contrary.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Defendants' motion for summary judgment ([Doc. #41](Doc. #41)) is **GRANTED**.

2. Plaintiff's motion for clarification ([Doc. #56](Doc. #56)) is **DENIED as moot**.

3. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 15th day of September, 2015.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

FTMP-1
Copies: All Parties of Record